IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2017 MAR 16 P 1:13

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| GLENN G. CAMP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: 2:17-cv-152 |
| v. | ) | |
| | ) | |
| HB&G BUILDING PRODUCTS, INC., | ) | JURY DEMAND |
| LANCE SERVAIS, and | ) | |
| MICHAEL MACK, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## JURISDICTION

1.     This Complaint seeks legal and equitable relief to redress Defendants' violations of Plaintiff's rights secured by the following:

      a.    The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634, as amended;

      b.    Alabama Age Discrimination in Employment Act ("AADEA"), Alabama Code (1975) § 25-1-20; and

      c.    Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*; and

1

    d.     The laws of the State of Alabama.

2.     Federal subject matter jurisdiction exists pursuant to:

    a.     28 U.S.C. §§ 1331, 1343, and 1367;

    b.     The ADEA, 29 U.S.C. § 626(c)(1); and

    c.     The FMLA, 29 U.S.C. § 2617(a)(2).

## PARTIES

3.     Plaintiff Glenn Camp (hereinafter "Camp" or "Plaintiff") is an individual over the age of forty (40). Camp is a resident of Daleville, Alabama, Dale County, and was employed by HB&G Building Products, Inc.

4.     Defendant HB&G Building Products, Inc. (hereinafter "HB&G" or "Defendant") is headquartered in Troy, Alabama and incorporated in the State of Delaware.

5.     Defendant HB&G is an enterprise engaged in commerce within the meaning of 29 U.S.C. §203(s)(1).

6.     Defendant HB&G employs at least twenty (20) persons within the meaning of the ADEA, 29 U.S.C. § 630(b).

7.     Defendant HB&G employs at least fifty (50) persons within the meaning of the FMLA, 29 U.S.C. § 2611(4)(a)(i)-(ii).

8.     Defendant HB&G operates and employs more than 500 people in various locations nationwide.

9.     At all times relevant to this Complaint, Defendant HB&G was conducting business in Pike County, Alabama.

10.    Defendant Lance Servais is over the age of nineteen and, at all times relevant to this Complaint, was a manager of Defendant HB&G, a resident of Montgomery County, Alabama, and is subject to the jurisdiction of this Court.

11.    Defendant Michael Mack is over the age of nineteen and, at all times relevant to this Complaint, was a manager of Defendant HB&G, a resident of Autauga County, Alabama, and is subject to the jurisdiction of this Court.

12.    Defendants Servais and Mack were acting directly or indirectly in HB&G's interests under the FMLA pursuant to 29 U.S.C. § 2611(4)(a)(ii)(I).

## VENUE

13.    Venue lies in the Middle District of Alabama.  28 U.S.C. § 1391.

## NATURE OF ACTION

14.    Camp alleges that Defendants engaged in unlawful employment practices and other acts of intentional age discrimination; interference and retaliation under the FMLA; and negligent and wanton hiring, training, supervision, and retention.  This action seeks to redress these grievances resulting

3

from the actions of Defendants, their agents, servants, and employees committed with respect to Camp's employment and otherwise; and for a permanent injunction restraining Defendants from discriminating against Camp and others similarly situated on account of age and their assertion of rights under the FMLA.

15.    Camp seeks make whole relief including reinstatement, back pay, front pay, compensatory damages, liquidated damages, and punitive damages where applicable, plus costs, interest, and attorneys' fees.

## ADMINISTRATIVE PROCEDURES

16.    On October 13, 2016, within 180 days of learning of the acts of discrimination of which he complains, Camp filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging age and disability discrimination and retaliation. **(Attached herein as Exhibit A).**

17.    On November 23, 2016, Camp filed a second Charge of Discrimination within 180 days of learning of Defendants' unlawful acts alleging age, disability, and race discrimination and retaliation. **(Attached herein as Exhibit B).**

18.    Camp has exhausted all conditions precedent to bringing suit under the ADEA. Camp's charges of age discrimination have been pending with the EEOC for more than sixty (60) days pursuant to 29 U.S.C. § 626(d)(1).

4

19.   The 180-day investigation periods for Camp's charges will expire on April 11, 2017 and May 22, 2017, respectively.

20.   Camp will supplement the Court with Notices of Right to Sue upon receipt from the EEOC.

21.   Camp has met all prerequisites for bringing this action.

## STATEMENT OF CLAIMS

22.   Plaintiff Camp is a 64 year-old individual born on ▮▮▮▮▮▮▮▮ 1952.

23.   Camp began working for Defendant HB&G in 1995.

24.   Camp worked as Defendant HB&G's Director of Human Resources for twenty-one (21) years.

25.   In September 2015, Camp injured his back and sought medical treatment.

26.   In October or November 2015, Camp notified HB&G's CEO, Defendant Lance Servais, and COO, Brian Murray, that he needed to take four to six weeks of FMLA leave for surgery.

27.   Servais told Camp that he could not hold Camp's job open for that long and that he would need to replace him.

28.   Camp, who needed his job and employment benefits, canceled his surgery.

29.   By March 2016, Camp's back condition had deteriorated.

30.   Camp walked with a limp and could not sit or stand in one position for any length of time.

31.   Around that time, Servais asked Camp whether he was planning to leave anytime soon.

32.   Camp told Servais that he was not planning on leaving the company, but that he would probably need surgery sometime in the near future.

33.   In early summer 2016, Servais once again asked Camp when he was leaving.  This time Servais specifically asked Camp when he was going to retire.

34.   Camp told Servais that he was not planning to retire or leave the company, but that he could not promise how much longer his back would hold up before he would require surgery.

35.   Servais told Camp that he was going to start looking for his replacement.

36.   Camp once again delayed surgery.

37.   In or around July or August 2016, Camp learned that Defendants were interviewing candidates.

38.   On or about August 17, 2016, Servais met with Camp and informed him that he had hired his replacement.

39.   Servais asked Camp to provide him a timeframe on retirement.

40.   Camp, knowing he was being forced out, told Servais that he would like to remain with the company through the end of the year.

41.   On or about August 25, 2016, Camp learned that Defendant Michael Mack had been hired to replace him.

42.   Camp was ordered to immediately begin reporting to Mack.

43.   Defendants gave Camp's office and computer to Mack and relegated Camp to a cubicle.

44.   On September 7, 2016, Camp notified Mack that he needed FMLA leave for back surgery.

45.   Mack told Camp that he thought Camp was leaving by the end of the month.

46.   Camp told Mack that no one had informed him of that.

47.   Mack then asked Camp for his doctor's note.

48.   Camp explained that he was giving his 30-day notice under the FMLA for leave, which triggers the company to provide Camp with the necessary paperwork.

49.   Mack did not appear to know what paperwork to provide Camp.

50.   Camp took it upon himself to obtain and complete the WH-381 form,

which he gave to Mack.

51.    Camp explained to Mack that, once the company issues Camp this form, Camp has fifteen (15) days to return it with his medical certification.

52.    Mack waited until September 23, 2016 to provide Camp with the form.

53.    Mack attempted to leave the date of September 8, 2016 as the date of issuance on the paperwork, which would have meant Camp's time to return the medical certification would have expired that day.

54.    Camp asked Mack to change it to the date Mack actually provided it—September 23, 2016—so that Camp would have fifteen (15) days to provide the medical certification.

55.    Mack did so, but listed the date to have the documentation returned as September 30, 2016, well short of the fifteen (15) days Camp is allowed under the FMLA.

56.    On September 12, 2016, Servais gave Camp a letter entitled "Offer Letter for Consulting Agreement."

57.    The first paragraph listed Camp's last day of employment as October 7, 2016.

58.    The letter stated that the company would keep Camp on as a consultant through the end of the year at a rate of $500.00 per week.

8

59.  The $500.00 per week rate was significantly less than Camp's regular rate of pay.

60.  Servais gave Camp a deadline of September 14, 2016, or two (2) days, to agree to the letter's terms.

61.  On September 14, 2016, Camp advised Servais that he had not been able to meet with legal counsel and, thus, could not accept the offer.

62.  Camp was called into a meeting with Servais, Mack, Murray, and CFO Janet Cobb advising him that he was being terminated.

63.  Camp again asked why he was being replaced and terminated.

64.  No one could answer Camp's questions.

65.  Camp pressed the issue, stating that he needed a reason to provide for his unemployment compensation.

66.  Cobb told Camp to say that he got tired of the drive.

67.  Camp told Cobb that he could not lie and that he needed a reason from the company.

68.  No one in this meeting could offer Camp any reason.

69.  Defendants compensated Mack, Camp's replacement, at a higher rate of pay than it had been compensating Camp.

70.  Mack is significantly younger than Camp.

9

71. Camp had significantly more experience than Mack as Director of Human Resources and twenty-one (21) more years of seniority with the company.

## COUNT ONE

### AGE DISCRIMINATION UNDER THE ADEA AND AADEA AGAINST DEFENDANT HB&G

72. Camp adopts and realleges paragraphs 1-71 as if fully recited herein.

73. This Count addresses those claims seeking to redress the unlawful employment practices of age discrimination conducted by Defendant HB&G, its agents, and employees, and ratified by Defendant HB&G in violation of federal and state law prohibiting age discrimination.

74. This action seeks to redress grievances resulting from acts of Defendant, its agents, servants, and employees committed with respect to Camp's employment and for a permanent injunction restraining Defendant from maintaining a policy or practice of discriminating against Camp and other persons similarly situated on account of age.

75. Camp is 64 years of age and a member of a protected group.

76. Camp is qualified to perform the job duties of Director of Human Resources and has conducted duties consistent with his position in a satisfactory manner for over twenty-one (21) years.

77.   Defendant subjected Camp to discriminatory treatment, including termination, based on his age.

78.   Defendant treated Camp differently than younger employees with respect to the terms and conditions of employment.

79.   Defendant treated younger employees with less experience and seniority more favorably than Camp with respect to the terms, conditions, and pay in their employment.

80.   Defendant's unlawful employment practices proximately caused Camp to suffer financial duress, wage and benefit loss, severe emotional distress, mental anguish, embarrassment, shame, humiliation, physical injury and pain, and trauma for which he claims damages.

81.   Camp seeks declaratory and injunctive relief, award of lost wages and benefits, back pay, front pay, compensatory damages, liquidated damages, costs, interest, attorneys' fees, and such other or further relief the trier of fact may assess.

**COUNT TWO**

**AGE HARASSMENT/HOSTILE WORK ENVIRONMENT
UNDER THE ADEA AND AADEA
AGAINST DEFENDANT HB&G**

82.   Camp adopts and realleges paragraphs 1-71 as if fully recited herein.

83.   This Count addresses those claims seeking to redress the unlawful

11

employment practices of age harassment conducted by Defendant HB&G, its agents, and employees, and ratified by Defendant HB&G in violation of federal and state law prohibiting age harassment.

84.   This action seeks to redress grievances resulting from acts of Defendant, its agents, servants, and employees committed with respect to Camp's employment and for a permanent injunction restraining Defendant from maintaining a policy or practice of harassing Camp and subjecting his and other persons similarly situated on account of age.

85.   Camp is 64 years of age and a member of a protected group.

86.   Defendant subjected Camp to harassment and a hostile work environment based on age that was severe or pervasive enough to alter the terms and conditions of Camp's employment.

87.   Defendant failed to implement and/or enforce policies prohibiting harassment on the basis of age.

88.   Camp complained about his adverse treatment.

89.   Defendant failed to investigate Camp's complaint(s).

90.   Defendant failed to adequately remedy Camp's hostile work environment.

91.   Defendant replaced Camp with a less qualified individual that is

12

significantly younger than Camp.

92.   Defendant's unlawful employment practices proximately caused Camp to suffer financial duress, wage and benefit loss, severe emotional distress, mental anguish, embarrassment, shame, humiliation, physical injury and pain, and trauma for which he claims damages.

93.   Camp seeks declaratory and injunctive relief, award of lost wages and benefits, back pay, front pay, compensatory damages, liquidated damages, costs, interest, attorneys' fees, and such other or further relief the trier of fact may assess at law.

## COUNT THREE

### FMLA INTERFERENCE
### AGAINST ALL DEFENDANTS

94.   Camp adopts and realleges paragraphs 1-15, 23-71 as if fully recited herein.

95.   Camp was a qualified employee under the FMLA.

96.   Defendants were covered employers under the Act.

97.   Camp suffered from a serious medical condition.

98.   Defendants had notice of Camp's intent to take FMLA leave for back surgery.

13

99.   Defendants HB&G and Servais threatened to terminate Camp if he took FMLA leave.

100.   Camp postponed necessary surgery and leave for almost a year because of Defendants' threats.

101.   Camp's back condition continued to deteriorate.

102.   On September 7, 2016, Camp notified Mack that he needed FMLA leave for back surgery.

103.   Mack told Camp that he thought Camp was leaving by the end of the month.

104.   Camp told Mack that no one had informed him of that.

105.   Mack then asked Camp for his doctor's note.

106.   Camp explained that he was giving his 30-day notice under the FMLA for leave, which triggers the company to provide Camp with the necessary paperwork.

107.   Mack did not appear to know what paperwork to provide Camp.

108.   Camp took it upon himself to obtain and complete the WH-381 form, which he gave to Mack.

109.   Camp explained to Mack that, once the company issues Camp this form, Camp has fifteen (15) days to return it with his medical certification.

14

110. Mack waited until September 23, 2016 to provide Camp with the form.

111. Mack attempted to leave the date of September 8, 2016 as the date of issuance on the paperwork, which would have meant Camp's time to return the medical certification would have expired that day.

112. Camp asked Mack to change it to the date Mack actually provided it—September 23, 2016—so that Camp would have fifteen (15) days to provide the medical certification.

113. Mack did so, but listed the date to have the documentation returned as September 30, 2016, well short of the fifteen (15) days Camp is allowed under the FMLA.

114. On September 12, 2016, five (5) days after Camp gave notice of his leave, Defendants advised Camp that they were terminating his employment effective October 7, 2016.

115. Defendants unlawfully interfered with Camp's ability to take FMLA leave for treatment of his serious medical condition.

116. Camp suffered damages as a result of Defendants' unlawful interference.

117. Camp seeks declaratory and injunctive relief, award of lost wages and

15

benefits, back pay, front pay, compensatory damages, liquidated damages, costs, interest, attorneys' fees, and such other or further relief the trier of fact may assess.

## COUNT FOUR

### FMLA RETALIATION
### AGAINST ALL DEFENDANTS

118.    Camp adopts and realleges paragraphs 1-15, 23-71 as if fully recited herein.

119.    Camp was a qualified employee under the FMLA.

120.    Defendants were covered employers under the Act.

121.    Camp suffered from a serious medical condition.

122.    Defendants had notice of Camp's intent to take FMLA leave for back surgery.

123.    Defendants HB&G and Servais threatened to terminate Camp if he took FMLA leave.

124.    Camp postponed necessary surgery and leave for almost a year because of Defendants' threats.

125.    Camp's back condition continued to deteriorate.

126.    On September 7, 2016, Camp notified Mack that he needed FMLA leave for back surgery.

127. Five (5) days later, on September 12, 2016, Defendants advised Camp that they were terminating his employment effective October 7, 2016.

128. Defendants' termination of Camp was proximate to and causally connected to his request for FMLA leave.

129. As a proximate result of Defendant's unlawful conduct, Camp suffered different terms and conditions of employment, severe emotional distress, physical pain and suffering, humiliation, mental anguish, trauma, and embarrassment, and financial loss.

130. Camp seeks declaratory and injunctive relief, award of lost wages and benefits, back pay, front pay, compensatory damages, liquidated damages, costs, interest, attorneys' fees, and such other or further relief the trier of fact may assess.

## COUNT FIVE

### NEGLIGENT AND WANTON HIRING, TRAINING, SUPERVISION AND RETENTION AGAINST DEFENDANT HB&G

131. Camp adopts and realleges paragraphs 1-4, 9-11, 13-15, 22-71 as if fully recited herein.

132. This is a claim arising under the laws of the State of Alabama to redress the negligent and wanton hiring, training, supervision and retention of Defendant HB&G's employees.

133. Defendant HB&G had a duty to provide a non-discriminatory, non-hostile, and non-retaliatory work environment to Camp and other employees.

134. Defendant HB&G negligently hired employees who were unqualified and/or unwilling to provide a lawful work environment to Camp and other employees.

135. Defendant had actual notice of Camp's complaints of discrimination and need for FMLA leave.

136. Defendant, having such knowledge, negligently and wantonly failed to train and discipline those employees who actively interfered with Camp's lawful rights under the FMLA, discriminated against him on the basis of age, and retaliated against him for asserting his lawful rights under the FMLA, ADEA, and AADEA.

137. In doing so, Defendants failed to protect Camp from further injury.

138. Defendant failed to administer its own policies against discrimination, interference, and retaliation and failed to regularly and clearly communicate such policies to its managers and employees.

139. Camp's working conditions created by Defendants were adverse and hostile and intended to cause Camp financial, physical, or emotional harm.

140. As a proximate result of Defendant's unlawful conduct, Camp

suffered different terms and conditions of employment, severe emotional distress, physical pain and suffering, humiliation, mental anguish, trauma, and embarrassment, and financial loss.

141. Camp seeks declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, compensatory and punitive damages for loss of career opportunity, humiliation and embarrassment, mental anguish, costs, interest, attorneys' fees, and any and all such other relief the trier of fact may assess.

**WHEREFORE**, Camp respectfully requests this Court:

A.     Grant a permanent injunction enjoining Defendants, HB&G's officers, successors, assigns and all persons in active concert or participation with them, from engaging further in its discriminatory treatment on the basis of age, from interfering with employees' rights under the FMLA, and from retaliating against employees for asserting their rights under the FMLA;

B.     Order Defendants to institute and carry out policies, practices and programs which provide equal provisions and employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices, including implementing a policy against discrimination, interference with FMLA rights, and retaliation for engaging in protected activities;

discrimination, interference with FMLA rights, and retaliation for engaging in protected activities;

C.   Order Defendants to make Camp whole by providing appropriate front pay, back pay, with prejudgment interest, back pay with prejudgment interest, in amounts to be proved at trial, reinstatement, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, compensatory damages, punitive and liquidated damages;

D.   Award Camp compensatory, punitive and liquidated damages;

E.   Award Camp costs and expenses, including reasonable attorneys' fees; and

F.   Award such other and further relief the Court deems necessary and proper.

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

Respectfully submitted,

Alicia K. Haynes ASB-8287-E23A

Sonya C. Edwards ASB-8848-S73E
Attorneys for Plaintiff

20

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama 35226
Phone: (205) 879-0377
Fax: (205) 879-3572
E-mail: akhaynes@haynes-haynes.com
E-mail: scedwards@haynes-haynes.com

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL:**

**DEFENDANTS' ADDRESSES:**

HB&G Building Products, Inc.
c/o David J. Woolf Drinker
Biddle & Reath, LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996

Mr. Lance Servais
HB&G Building Products, Inc.
350 Hendrix Road
Troy, AL 36081-3134

Mr. Michael Mack
HB&G Building Products, Inc.
350 Hendrix Road
Troy, AL 36081-3134

**PLAINTIFF'S ADDRESS:**

Mr. Glenn G. Camp c/o Alicia K. Haynes
and Sonya C. Edwards Haynes & Haynes,
P.C.
1600 Woodmere Drive
Birmingham, Alabama 35226