IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GLENN G. CAMP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL CASE NO. 2:17-cv-152-ECM |
| v. | ) | (WO) |
| | ) | |
| HB&G BUILDING PRODUCTS, INC., | ) | |
| LANCE SERVAIS, and MICHAEL | ) | |
| MACK, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

## I.  INTRODUCTION

Plaintiff Glenn G. Camp ("Camp") brings this employment discrimination action against his former employer, Defendant HB&G Building Products, Inc. ("HB&G"), its Chief Executive Officer Lance Servais ("Servais"), and Director of Human Resources Michael Mack ("Mack").  Camp alleges that in September 2016, HB&G terminated his employment as Director of Human Resources and replaced him with Mack, a younger African American male.  He brings claims of discrimination on the bases of race, disability, and age, and retaliation claims against HB&G pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, as amended ("ADA"); and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634, as amended ("ADEA") and the Alabama Age Discrimination in Employment Act, Alabama Code § 25-1-20 (1975) ("AADEA").

1

He also brings claims of interference and retaliation under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, ("FMLA").

Now pending before the Court is the Defendants' motion for summary judgment. (Doc. 53). The Plaintiff has filed a response in opposition to the motion, (doc. 62), and the motion is ripe for review. After careful consideration, the Court concludes that the Defendants' motion for summary judgment is due to be granted in part and denied in part. Specifically, summary judgment is due to be granted to the Defendants on the Plaintiff's claims of race, disability, and age discrimination, and his claim of retaliation under the FMLA. To the extent that the Plaintiff brings harassment and retaliation claims under the anti-discrimination statutes, summary judgment is due to be granted on those claims. Summary judgment is also due to be granted to the individual defendant Mack on Camp's FMLA interference claim.[1]

Summary judgment is due to be denied solely on the Plaintiff's FMLA interference claim that is based on his September 2015 FMLA leave request against HB&G and Servais.

## II. JURISDICTION AND VENUE

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 and the jurisdictional grant found in 42 U.S.C. § 2000e-5(f)(3). The Court has supplemental jurisdiction of the Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a).

---

[1] Camp also brought state law claims of negligent and wanton hiring, training, supervision and retention against HB&G, but, in response to the Defendants' motion for summary judgment, he "voluntarily dismisses his Negligent and Wanton Hiring, Training, Supervision and Retention Claims." (Doc. 63 at 68). Accordingly, this claim is dismissed.

Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama.  *See* 28 U.S.C. § 1391.

### III.  SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the *Federal Rules of Civil Procedure*, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence demonstrating there is no dispute of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id*. at 322–23. Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (citing *Anderson*, 477 U.S. at 248).

Once the movant has satisfied this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   Non-movants must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A) & (B).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003).  Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255.  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

A reviewing court is constrained during summary judgment proceedings from making the sort of determinations ordinarily reserved for the finder of fact at a trial. *See Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (citations and quotations omitted) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").  After the nonmoving party has responded to the motion for summary judgment, the court must

grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).

In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992).

## IV.  FACTS

Glenn Camp is a Caucasian male who served as the Director of Human Resources for HB&G from 1995 until his separation from the company in October 2016.  Camp was sixty-two years old when he was terminated.  Graham Partners, a private equity firm, owns HB&G, and the company manufactures building products.  Servais is a Caucasian male over the age of fifty who has served as CEO and President of HB&G since August 2009. In August 2016, HB&G hired Mack, then a forty-four-year old African American male, to replace Camp as Director of Human Resources.  Servais supervised Camp directly until August 29, 2016, when Servais designated Mack as Camp's direct supervisor.

In September 2015, Camp injured his back, cutting trees on his property.  Camp was treated by his general practitioner, Dr. DiChiara, over the course of three or four office visits during the month of September.  Dr. DiChiara referred Camp to Dr. McNeal, a neurosurgeon.  Camp saw Dr. McNeal once in September 2015, and McNeal recommended surgery.

On October 1, 2015, Camp completed a "FMLA Notice of Eligibility form" that he addressed to himself from himself as HR Director.  Around the same time that Camp completed the FMLA paperwork, he informed Servais about his back injury.  According to Camp, Servais told him that he would lose his job if he took extended FMLA leave to have back surgery.  Servais denies this.  Thereafter, Camp elected not to have the surgery recommended by Dr. McNeal.  Camp did not fill out or submit any paperwork to reflect that his FMLA request had been denied or that he no longer planned to take FMLA leave.

In 2016, Graham Partners sought to sell HB&G.  According to Servais, it was his understanding that Camp did not want to remain with the company if HB&G was sold.  Servais asserts that, beginning in 2010, Camp told him several times that he did not want to continue to be employed by HB&G if Graham Partners sold the company.  Servais contends that he believed that Camp wanted to retire or to leave HB&G's employ before the company was sold.  Acting on his belief that Camp did not want to stay with HB&G during a sale, Servais determined that HB&G needed to find a replacement for Camp as Director of Human Resources to ensure a smooth transition at the senior management level should the company sell in the fourth quarter of 2016.

In June 2016, Servais informed Camp that HB&G might be sold, and that Servais was going to begin the process of replacing Camp as HR Director.  Shortly thereafter, Servais began the process of seeking a replacement for Camp.  Servais asked Camp to assist in the search process.  Camp did not question Servais about why he was hiring a Director of Human Resources, nor did Camp tell Servais that he did not want to leave

HB&G.  At that time, the only thing Camp told Servais was that he wanted to remain employed with HB&G at least until the end of 2016.

There is no evidence that Camp applied for the position of Director of Human Resources, and, in August 2016, HB&G hired Mack to replace Camp.  As previously noted, Mack is African American, and he is younger than Camp.  Servais informed Camp of Mack's hiring in August and told Camp that HB&G wanted Camp to remain with the company through September to assist with Mack's transition.  Camp contends that Servais told him that Mack was hired, in part, because of Mack's race—to increase the number of minorities in management positions.  Servais disputes this interpretation of the conversation.

After Mack's hiring was announced, Servais discovered that Camp did not wish to leave the company. Servais had been unaware that Camp wanted to remain employed as HB&G's Director of Human Resources until after Mack was hired as his replacement.  The Defendants assert that Camp changed his mind about a voluntary separation from employment with HB&G, but only after Mack had been hired.

Camp, on the other hand, denies that he ever told Servais that he did not want to remain employed if the company was sold, or that he planned to retire or leave HB&G. Camp denies any desire to  leave HB&G if the company was sold.  According to Camp, he never planned to retire or voluntarily leave his job with HB&G.  However, Camp never said anything to Servais about his desire to stay at HB&G in June 2016 when Servais told him that HB&G was starting the hiring process to find Camp's replacement as HR Director. Camp also did not apply for that position in June or July of 2016.  Camp does not deny

telling Servais in June 2016 that he wanted to remain employed as the HR Director at least until the end of the year.

On September 8, 2016, Camp submitted a request to Mack, the new HR Director, for FMLA leave beginning October 6, 2016.  At that time, Camp had a scheduled appointment with Dr. McNeal on September 27, 2016.  According to Camp, HB&G's FMLA policy required him to give the company thirty days' notice of FMLA leave.  After receiving Camp's written FLMA leave request, Mack emailed Servais, writing, *inter alia*, "I am unclear about the transition for [Camp]. I thought he was voluntarily leaving Due (sic) to retirement. This morning he sent me a request for FMLA leave starting on the 27th." (Doc. 53 at 17).  Servais responded to Mack the same day by email that Camp had "changed his position after we hired you and said he wishes to continue to work with a different company.  I have given him September 30 as his last day of employment, unless you had a need and he agreed to a longer time frame."  (*Id.*)

On September 23, 2016, Mack notified Camp that he was eligible for FMLA leave. On September 27, 2016, Camp saw Dr. McNeal as scheduled, but Dr. McNeal informed Camp that surgery was not necessary.  On October 2, 2016, Camp informed Mack and Servais that he no longer needed surgery or FMLA leave.  Camp was not denied FMLA leave following his September 2016 FMLA request.

Meanwhile, on September 12, 2016, Servais offered Camp a consulting contract for the remainder of 2016.  The consulting contract was presented as a proposed, confidential agreement whereby Camp's last day of employment would be October 7, 2016; he would be paid $500 per week or any part of a week until December 31, 2016; he would be

compensated at that rate during the period he had surgery and was recovering; HB&G would keep Camp on its medical insurance plan without an increase in Camp's contributions or rate until the end of 2016, at which point Camp would be put on COBRA rates; HB&G would pay Camp's annual bonus as though he completed the year as an employee; and HB&G offered to supply company products to Camp at no cost to him. The proposed agreement also made provisions for Camp to be paid should HB&G be sold, and the payment options were guaranteed until December 31, 2019. Servais recommended that Camp consult with an attorney about the offer. Camp declined the offer.

Camp's last day of employment was October 7, 2016. Camp filed a claim for unemployment benefits, and HB&G did not oppose it.

Ultimately, Graham Partners did not sell HB&G, as the sales process was terminated in the fall of 2017.

After pursuing claims of discrimination and retaliation with the Equal Employment Opportunity Commission, Camp filed this action on March 16, 2017.

## V. DISCUSSION

In the operative complaint ("Complaint"), the Plaintiff asserts the following claims: (1) Count One – Title VII claims of race discrimination based on demotion, disparate treatment in terms of pay and conditions of employment, hostile work environment, retaliation and termination against HB&G; (2) Count Two – ADA disability discrimination, failure to accommodate, harassment, hostile work environment, and retaliation related to his back injury against HB&G; (3) Count Three – ADEA and AADEA disparate treatment, hostile work environment, retaliation, and termination based on his

age against HB&G; (4) Count Four – FMLA interference against all Defendants; and (5) Count Five – FMLA retaliation against all Defendants.  (Doc. 31).

The Defendants move for summary judgment on all counts.

## A.  Count One – Title VII Race Discrimination Claims

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 347 (2013).  Camp first alleges that HB&G demoted him and ultimately terminated him because of his race.

Camp bears the ultimate burden of proving that the Defendant intentionally discriminated against him.  *Texas Dep't. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981).  The Eleventh Circuit has consistently held that federal courts, in resolving discrimination claims, do not review the wisdom of an employer's employment decision. *See e.g., Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1324 n.16 (11th Cir. 1998) (explaining, "Title VII is not a shield against harsh treatment at the workplace. . . .The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason").

Camp relies on circumstantial evidence to support his claims.  Therefore, Camp must first establish a prima facie case of discrimination by presenting evidence to satisfy

the test set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2]  If Camp

establishes a prima facie case, the burden shifts to HB&G to produce "some legitimate,

non-discriminatory reason" for the challenged employment action. *See id.* at 802.  If

HB&G satisfies this burden, Camp must then establish, by a preponderance of the

evidence, that the articulated reasons were mere pretext for intentional discrimination.

*Burdine,* 450 U.S. at 256.  In the summary judgment context, Camp needs only to present

evidence from which a reasonable trier of fact could conclude the Defendants intentionally

discriminated against him on a legally impermissible basis.

Alternatively, Camp can "survive summary judgment if he presents circumstantial

evidence that creates a triable issue concerning the employer's discriminatory intent."

*Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  "A triable issue

of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a

convincing mosaic of circumstantial evidence that would allow a jury to infer intentional

discrimination by the decisionmaker." *Id.* Camp may establish a convincing mosaic by

pointing to evidence that demonstrates "(1) suspicious timing, ambiguous statements . . .,

and other bits and pieces from which an inference of discriminatory intent might be drawn,

(2) systematically better treatment of similarly situated employees, and (3) that the

---

[2]  Although the Plaintiff acknowledges and argues the merits of his claims under the *McDonnell Douglas* paradigm, he also argues that the framework is outdated and has been obviated by amendments and case law.  This Court is bound by Supreme Court and Eleventh Circuit precedent, and the use of the *McDonnell Douglas* framework in employment discrimination cases is still appropriate.

employer's justification is pretextual." *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1185 (11th Cir. 2019).

To establish a prima facie case of disparate treatment based on his race, Camp must show that (1) he is a member of a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) similarly situated employees outside of his protected class were treated more favorably. *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of South Fla.*, 342 F.3d 1281, 1289 (11th Cir. 2003). It is undisputed that Camp satisfies the first two elements of a prima facie case for race discrimination.

Turning to the third element, Camp contends that he suffered the adverse employment actions of demotion and termination. A demotion and termination are "ultimate employment decisions" which constitute adverse employment actions. *See Crawford v. Carroll,* 529 F.3d 961, 970 (11th Cir. 2008). Although HB&G contends that Camp was not demoted or terminated, the Court assumes without deciding for the purposes of summary judgment that Camp was demoted and ultimately terminated from his position as Director of Human Resources. Based on these adverse employment actions, Camp has sufficiently established the third element of a prima facie case of race discrimination.

As to the fourth element, Camp relies on Mack's hiring as evidence that persons outside his protected class were treated more favorably. Accordingly, the Court concludes that, for the purpose of summary judgment, Camp has demonstrated a prima facie case of race discrimination.

The burden now shifts to HB&G to articulate legitimate, nondiscriminatory reasons

for its actions. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010). HB&G "need not persuade the court that it was actually motivated by the proffered reasons." *Id*. (quoting *Burdine*, 450 U.S. at 254).   Instead, HB&G can rebut the presumption of discrimination by articulating a non-discriminatory reason for the employment action.   Thereafter, the burden shifts back to the Plaintiff to show that the articulated reason is simply a pretext for discrimination.  *Id*.

HB&G asserts that the potential sale of HB&G, coupled with Servais' beliefs that Camp did not want to be involved in a sale of the company and that he was retiring, are legitimate, nondiscriminatory reasons as to why Servais hired a new Director of Human Resources to replace Camp.  Servais testified that HB&G began preparing for a possible sale of the company:  "In May 2016, I began seeking a replacement for HB&G's current Director of Human Resources, Glenn Camp, based on my understanding that he did not wish to remain with the company after it was sold." (Doc. 54-2 at 3, para. 8).

In June 2016, Servais informed Camp that HB&G might be sold.  Although Camp denies previously telling Servais that he did not wish to remain with the company at the time the company was sold, he concedes that he did not correct or question Servais about his beliefs to that effect in June 2016.  While Camp disputes having prior conversations with Servais about his desire not to remain employed by HB&G after a sale of the company, this dispute is not a material one which precludes summary judgment.  The Defendant's proffered legitimate, non-discriminatory reason that Servais believed Camp wanted to leave the company in the event of a sale is supported by evidence in the record.  The Court should not "recast the reason given by an employer for taking or failing to take a particular

job action." *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1260-61 (11th Cir. 2001) (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1030 n.19 (11th Cir. 2000) (*en banc*) ("Just as plaintiffs are not allowed to recast an employer's proffered reason, so also should courts refrain from doing so.")).  Indeed, Camp does not dispute that Servais believed he wanted to leave the company if it was sold.  "A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by [race]." *Lee v. GTE Fla., Inc.*, 226 F.3d 1249, 1253 (11th Cir. 2000); *Silvera*, 244 F.3d at 1261 ("[A] mistaken belief in the existence of a neutral reason does not violate Title VII."). The Defendant has presented evidence in the form of Servais' deposition and affidavit testimony that, if believed by a trier of fact, establishes that race discrimination did not motivate Servais' decision to replace Camp as Director of Human Resources.  Thus, even if this reason is mistaken, the burden shifts to Camp to produce evidence that the proffered reason was pretext and that race discrimination motivated Servais.

Camp has not offered evidence sufficient to establish pretext.  The evidence of race discrimination that Camp points to is the fact that Mack is African-American and Servais told Camp—long after Camp was told he was being replaced and after Mack was offered the job—that HB&G wanted to have more minority employees in management positions. Servais's alleged comment to Camp that Mack was hired in part because of the Company's desire for more diversity may suggest that race played a role in Mack's *hiring*, but it has no bearing on Camp's claims.  The mere fact that Camp was replaced by an African American male is not evidence that he was replaced because he was Caucasian.  Camp offers no evidence to refute HB&G's proffered evidence that the decision to replace Camp

14

was made *before* HB&G was even aware that Mack might be a candidate for Camp's position. The undisputed evidence demonstrates that Servais informed Camp that HB&G was hiring a third-party search company to gather qualified candidates for the Director of Human Resources position as early as spring 2016, that the headhunter firm submitted Mack as a candidate, and that Servais made the aforementioned comment after Mack was offered the job and before his start date. Accordingly, this comment, if made, is insufficient to establish pretext. Camp has presented no evidence from which a reasonable jury could conclude that the decision to replace him was motivated by his race.

A plaintiff may also establish pretext by producing evidence that reveals "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [the Defendants'] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Gr., Inc.*, 509 F.3d 1344, 1348–49 (11th Cir. 2007). "However, a reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.'" *Id.* (citing *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006)) (emphasis in original).

In some cases, proof that an employer's asserted justification is false, when coupled with the evidence establishing the plaintiff's prima facie case, is sufficient to permit an inference of discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000). However, Camp's evidence of pretext is entirely rooted in his own beliefs and inferences. At best, Camp presents nothing more than unsubstantiated allegations and conclusory statements in opposition to the Defendant's motion for summary judgment with

respect to his race discrimination claim. "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987); *see also Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) (conclusory allegations without specific supporting facts have no probative value).

> Title VII does not make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal . . . What the law does require is that an employer not discriminate against an employee on the basis of the employee's protected class characteristics.

*E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312, 1319 (10th Cir. 1992).

Accordingly, because Camp cannot show a genuine issue of material facts exists with respect to pretext, the Defendant is entitled to summary judgment on his race discrimination claims.

## II.  Count Two – ADA Disability Discrimination Claims

The ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions [or] privileges of employment." 42 U.S.C. § 12112(a); *United States E. O.C. v. St. John's Hospital, Inc.*, 842 F.3d 1333, 1343 (11th Cir. 2016). "A qualified individual is an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." *Mazzeo v. Color Resolution Intern., LLC*, 746 F.3d 1264, 1267–68 (11th Cir. 2014). A person has a disability if he has "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an

impairment; or (C) regarded as having such an impairment." *Rossbach v. City of Miami*, 371 F.3d 1354, 1357 (11th Cir. 2004).

"To establish a *prima facie* case for disability discrimination, a plaintiff must present sufficient evidence to permit a jury to find that []he: (1) is disabled, (2) is a qualified individual, and (3) was discriminated against because of [his] disability." *Lewis*, 934 F.3d at 1179 (italics in original). Camp bears the initial burden of establishing that he has, or is perceived by HB&G as having, a disability within the meaning of the ADA, which requires a demonstration that his physical impairment either does, or is perceived to, substantially limit one or more major life activities.[3] *Mazzeo*, 746 F.3d at 1268.

Camp asserts that he is disabled from his back injury, or was perceived by HB&G as disabled, because he walked with a limp, could not sit for any length of time, and often had to stand in meetings because of his back pain. Camp alleges that the Defendants failed to accommodate his disability—his back injury—by denying him FMLA leave to have surgery. Camp further argues that Defendants terminated his employment based on his disability, rather than to allow him a leave of absence for back surgery and recovery at some point in the future.

The Court accepts without finding that Camp's back injury constitutes a disability for the purposes of the ADA. *Lewis*, 934 F.3d at 1180. However, Camp must still establish that his disability substantially limits a major life activity, or that HB& perceived him to

---

[3] For Camp to succeed on a "regarded as" theory of disability, he must demonstrate that HB&G regarded him as having "a physical impairment that substantially limits one or more major life activities" or that the Defendants regarded his "actual, nonlimiting impairment [as] substantially limit[ing] one or more major life activity." *See Carruthers v. BSA Advertising, Inc.*, 357 F.3d 1213, 1216 (11th Cir. 2004).

be substantially limited in a major life activity.  To be considered substantially limiting, the impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity." 29 C.F.R. § 1630.2(j)(1)(ii). "The determination of whether an impairment substantially limits a major life activity requires an individualized assessment." *Id*. at § 1630.2(j)(1)(iv). In determining whether an individual is substantially limited in a major life activity, the condition, manner, or duration of the impairment is considered.  *Id*. at § 1630.2(j)(4).

Camp contends that he is substantially limited in the major life activities of walking, standing and sitting because, due to his back injury, he limped, could not sit for long periods of time, and often stood in meetings.   He contends that the Defendants must have regarded him as disabled because they terminated him for requesting FMLA leave. Camp relies on his own testimony that he suffered a back injury.  While Camp asserts that his injury adversely affected his ability to walk, sit and stand, Camp presents no other evidence describing his back injury, or detailing the extent of his back injury.  Camp does not assert that he missed work as the result of his back injury.  In fact, Camp continued to perform his job duties. *Munoz v. Selig Enterprises, Inc*., 981 F.3d 1265, 1273 (11th Cir. 2020) (noting that "the record [did] not contain evidence of the timing, frequency, and duration of [the Plaintiff's] impairments"); *Lewis*, 934 F.3d at 1180 (noting that the "record [was] devoid of evidence of the severity, frequency, and duration" of pain that substantially limits a major life activity."). Beyond his assertion that his back injury substantially limited a major life activity, or that HB&G perceived him to be substantially limited, Camp points

to no other evidence the HB&G considered him to be substantially limited by his back injury.

Camp must demonstrate that there are genuine issues of material facts regarding whether his back impairment actually, or was perceived by the Defendant, as substantially limiting him in the major life activity of walking, sitting, and standing. Without presenting some evidence that he was substantially limited in a major life activity, or that HB&G perceived him to be substantially limited, Camp's disability claim fails. *Munoz*, 981 F.3d at 1273–74; *E.E.O.C. v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019) ("To state a disability discrimination claim, a claimant must allege that []he was a "qualified individual" who suffered an adverse employment action because of [his] "disability" as those terms are defined by the ADA.").

Moreover, assuming without deciding, that a leave of absence in September 2015, September 2016, or sometime in the vague future would constitute an accommodation for the Camp's back injury, Camp's failure to accommodate claim fails as a matter of law. The ADA imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in an undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A); *Batson v. Salvation Army*, 897 F.3d 1320, 1326 (11th Cir. 2018). It is the plaintiff's burden to identify an accommodation and demonstrate that the accommodation would permit him to perform the essential functions of his job. *See also Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255–56 (11th Cir. 2001). Camp has not demonstrated that the accommodation of FMLA leave would allow him to perform the essential functions of his job as Human Resources Director. In fact, the evidence is

contrary—Camp continued to perform his job's essential functions without FMLA leave and testified that he would have continued to do so had his employment continued regardless of whether he was accommodated with FMLA leave. Thus, the Court concludes that Camp has failed to meet his burden of demonstrating that FMLA leave was a reasonable accommodation which would allow him to perform the essential functions of his job.

Furthermore, Camp points to no evidence that he asked for FMLA leave as an accommodation for his disability. In 2015, Camp completed the FMLA form, addressed to and from himself as HR Director. There is no evidence that Camp requested the leave as accommodation, or that the leave was denied. With respect to his request for FMLA leave in 2016, the undisputed evidence demonstrates that Mack told Camp he was eligible for FMLA leave, but Camp informed Mack that he no longer needed surgery or leave. Even if the FMLA request could be considered a request for an accommodation, Camp was not denied leave or an accommodation. "Absent such denial, there can be no failure to accommodate under the ADA." *Batson*, 897 F.3d at 1327. Consequently, no reasonable jury could conclude from the evidence that Camp requested a reasonable accommodation, or that he was terminated based on a disability. Thus, the Defendant is entitled to summary judgment on the Plaintiff's disability discrimination claims.

### C.  Count Three – ADEA and AADEA Age Discrimination Claims

The Court now turns to Camp's claim of age discrimination.[4]  Because Camp's age

discrimination claim is based circumstantial evidence, the Court applies the *McDonnell*

*Douglas*, *supra*, framework.

> To make a prima facie case of age discrimination, the
> employee must show: (1) he was a member of the protected
> group between the age of forty and seventy; (2) he was subject
> to an adverse employment action; (3) a substantially younger
> person filled the position from which he was discharged; and
> (4) he was qualified to do the job from which he was
> discharged. *Kragor v. Takeda Pharm. Am., Inc.,* 702 F.3d
> 1304, 1308 (11th Cir. 2012). Once an employee has established
> a prima facie case, "the burden shifts to the employer to rebut
> the presumption of discrimination with evidence of a
> legitimate, nondiscriminatory reason for the adverse
> employment action." *Id.* If the employer proffers a legitimate,
> nondiscriminatory reason, the burden shifts back to the
> employee to show that the employer's reason is a pretext. *Id.*

*Liebman v. Metropolitan Life Ins. Co*., 808 F.3d 1294, 1298 (11th Cir. 2015).

"To ultimately prevail, a [p]laintiff must prove by a preponderance of the evidence

(which may be direct or circumstantial), that age was the but-for cause of the challenged

employer decision." *Mazzeo*, 746 F.3d at 1270 (quoting *Gross v. FBL Fin. Servs., Inc.,* 557

U.S. 167, 177–78 (2009)) (internal quotations omitted); *Sims v. MVM, Inc*., 704 F.3d 1327,

1332 (11th Cir. 2013).

The parties do not dispute that Camp has established a prima facie case of age

discrimination.  However, in response to Camp's age discrimination claim, HB&G proffers

---

[4]  Alabama courts have "adopted the same burden-shifting analysis applied to federal age-discrimination claims brought under the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*." *Lambert v. Mazer Disc. Home Centers, Inc.*, 33 So. 3d 18, 23 (Ala. Civ. App. 2009) (citing *Robinson v. Alabama Cent. Credit Union*, 964 So. 2d 1225, 1228 (Ala. 2007)).

the same legitimate, non-discriminatory reason for replacing Camp—Servais believed that Camp did not want to stay with the company if it was sold.  The Defendant has presented sufficient evidence in the form of Servais' deposition and affidavit testimony that establishes that age discrimination did not motivate Servais' employment decision, if believed by a trier of fact.

The burden shifts to Camp to offer evidence sufficient to establish pretext.  "The burden of persuasion always remains on the plaintiff in an ADEA case to proffer evidence sufficient to permit a reasonable fact finder to conclude that the discriminatory animus was the 'but-for' cause of the adverse employment action." *Sims*, 704 F.3d at 1332.  According to Camp, his termination was discriminatory because he was replaced by Mack who was substantially younger.  Camp also points to comments by Servais, at some point in the past, when Servais inquired about when older employees were eligible to retire.  Of course, there are perfectly benign explanations for why a CEO would ask the Director of Human Resources when employees are eligible to retire that have nothing whatsoever to do with age discrimination — the CEO of a company has a responsibility to plan for future staffing changes and needs. Camp has not presented any evidence that there were discriminatory reasons for any such inquiries.  More fundamentally, however, Camp fails to present sufficient evidence of pretext and that his age was the "but-for" cause of Servais' decision. *See Sims*, 704 F.3d at 1334 (presenting "virtually no evidence of age bias on the part of [the decision-maker] who was 61 himself at the time.").  After careful review, the Court concludes that Camp has failed to demonstrate pretext, or that age bias was the "but-for"

cause of Servais' decision.  The Defendant's motion for summary judgment on this claim under both the ADEA and the AADEA is due to be granted.

### D.      FMLA Claims (Counts Four and Five)

### 1.      Individual liability under the FMLA

Defendants Servais and Mack contend that they are entitled to summary judgment on Camp's FMLA claims individually because they are not considered an "employer" under the FMLA.  The Defendants argue that

> [a]s a preliminary matter, neither Servais or Mack can be held liable for either FMLA claim because neither meets the definition of an employer under the FMLA and the 11th Circuit has not recognized individual supervisory liability under the FMLA.

(Doc. 53 at 22) (footnote omitted).

Camp responds that the definition of an "employer" can include individuals employed as supervisors for a corporate entity, but he concedes that Mack cannot be considered an employer for purposes of the September 2015 FMLA request because Mack was not an employee of HB&G in 2015.

Servais and Mack fail to properly articulate reasons why they should not be considered employers.  On a motion for summary judgment, the Defendants bear the burden of demonstrating that they are entitled to judgment as a matter of law.  On this point, the Defendants have failed to meet their burden as they do not make any argument in their brief in support of their motion for summary judgment to demonstrate that Mack and Servais are not "employers" as a matter of law beyond arguing, generally, that the Eleventh Circuit has not recognized individual liability against supervisors as employees

under the FMLA.  The onus is upon the parties to formulate arguments, and absent argument and supporting statutes or case law, the Defendants' argument that Mack and Servais are not "employers" is simply too undeveloped and devoid of support to compel a finding in their favor or even to trigger a meaningful review by the Court.  *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir.  1995); *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp*., 10 F.3d 1563, 1568 (11th Cir. 1994).  For this reason, the Court concludes that the Defendants are not entitled to summary judgment on this issue.

### 2.    FMLA Interference Claim

Camp alleges that Servais interfered with Camp's right to FMLA leave in September 2015, and that Servais and Mack interfered with his right to FMLA leave in September 2016.  The FMLA guarantees eligible employees "12 workweeks of leave during any 12-month period . . .  [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Drago v. Jenne*, 453 F.3d 1301, 1305–06 (11th Cir. 2006) (alteration in original); *Strickland v. Water Works and Sewer Bd. of the City of Birmingham,* 239 F.3d 1199, 1206 (11th Cir. 2001). "An FMLA interference claim lies if an employee can demonstrate by a preponderance of the evidence that []he was entitled to an FMLA benefit and [his] employer denied [him] that benefit." *Munoz*, 981 F.3d at 1275; *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1247 (11th Cir. 2015).  A plaintiff "does not have to allege that his employer intended to deny the right; the employer's motives are irrelevant." *Strickland,* 239 F.3d at 1208. "[B]ecause the FMLA requires notice in advance of future leave, employees are

protected from interference prior to the occurrence of a triggering event." *Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1274 (11th Cir. 2012).

Camp asserts that (1) he applied for FMLA leave in September 2015 to have corrective surgery for a back injury; (2) he informed Servais—his immediate supervisor and the ultimate decision maker regarding his FMLA leave request—that he needed several weeks of FMLA leave; and (3) Servais told Camp that, if Camp took FMLA leave, he would be replaced. Servais denies telling Camp that he would be replaced if he took leave for surgery. Clearly, there are genuine disputes of material fact about what Servais said about Camp's need for FMLA leave. If believed by a trier of fact, Camp's version of the facts is sufficient to sustain an FMLA interference claim. Construing the facts in a light most favorable to the Plaintiff, Servais threatened Camp with termination if he took FMLA leave in 2015.[5] The threat caused Camp to abandon his attempt to obtain FMLA leave. This is sufficient to survive the Defendants' motion for summary judgment on Camp's September 2015 FMLA interference claim. Consequently, with regard to Camp's FMLA interference claim based on his September 2015 leave request, summary judgment is due to be denied as to this claim against HB&G and Servais.[6]

---

[5] To the extent that the Defendants argue that HB&G and Servais "never got the opportunity to fully assess, analyze, and grant or deny the request, which cannot be considered an actual request," (doc. 53 at 23-24), they are entitled to no relief on this basis. It is unlawful under the FMLA for an employer "to interfere with, restrain, or deny … *the attempt to exercise*" any right allowed by the FMLA. 28 U.S.C. § 2615(a)(1) (emphasis supplied). Construing the facts and inferences in the light most favorable to Camp, as the Court must do on summary judgment, Camp's actions are sufficient to place Servais and HB&G on notice that Camp was attempting to exercise his rights under the FMLA.

[6] The Plaintiff concedes that this claim is not appropriate against Mack, and summary judgment will be entered in his favor on this claim.

The Court now turns to Camp's FMLA interference claim based on his September 2016 FMLA request.  Camp testified that he was not denied FMLA leave in 2016. As a matter of law, an interference claim cannot succeed if the FMLA request was not denied. *See*, *e.g.*, *Drago*, 453 F.3d at 1305–06. Moreover, the uncontroverted evidence demonstrates that Camp withdrew his 2016 FMLA request after his September 27, 2016 appointment with Dr. McNeal because he did not need surgery or FMLA leave. Furthermore, it is undisputed that HB&G, Servais, and Mack considered Camp's FMLA request and determined that he was in fact eligible for the leave.

The Plaintiff argues that a jury could infer that the decision to terminate Camp's employment was made after Camp submitted an FMLA request in September 2016 in order to deny him FMLA leave.  Relying on the fact that the parties had not settled on Camp's final date of employment, Camp argues a trier of fact could conclude that he was terminated because he requested FMLA leave on September 8, 2016.  This argument is unavailing.  In June 2016, Servais told Camp that he was being replaced and that the company wanted Camp to stay on for a transition period after a replacement was hired. In August 2016, Mack was hired to replace Camp.

On September 7, 2016, Camp submitted his request for FMLA leave beginning on October 6, 2016.  By the time Camp submitted his FMLA request, the decision to terminate his employment had already made and communicated to him.  Although Camp contends that a jury could find that the Defendants decided to hasten his departure because of the FMLA request, Camp presents no supporting evidence.  More importantly, it is the decision to terminate Camp's employment, not the timing of his separation from employment, that

would constitute an adverse employment action.  The decision to replace Camp occurred long before Camp requested FMLA leave in September 2016.

When Mack received the FMLA request, he contacted Servais the next day to request guidance, as he believed Camp was setting up the company. Servais suggested that the company seek legal advice.  Ultimately, on September 23, 2016, the company approved Camp's FMLA request.  However, Camp withdrew the request on October 2, 2016.  There is simply no evidence before the Court that the Defendants interfered with Camp's request for FMLA leave in September, 2016.  To the contrary, the uncontroverted evidence of record is that the Defendants considered Camp's request and approved it.  Accordingly, the Defendants are entitled to summary judgment regarding Camp's 2016 FMLA request.

### 3.     FMLA Retaliation

Camp also brings FMLA retaliation claims with respect to the 2015 and 2016 FMLA requests. Unlike an interference claim, which does not have a scienter element, Camp "must demonstrate that [HB&G] intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right." *Jones v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1270 (11th Cir. 2017) (internal quotations omitted).  "In other words, [Camp] must show that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." *Strickland*, 239 F.3d at 1207 (internal quotations omitted).

Camp contends that HB&G terminated his employment as retaliation for his attempts to exercise his FMLA rights in 2015 and 2016.  According to Camp, after he requested FMLA leave in 2015 due to his back injury, Servais told him that he would be

replaced if he took FMLA leave.  Camp then chose to not have surgery.  Camp asserts that he was terminated on October 7, 2016, after he again requested FMLA leave in September 2016.

Neither the Plaintiff nor the Defendants assert that there is direct evidence of retaliation in this case. Therefore, the Court again applies the *McDonnell Douglas* framework to Camp's retaliation claims:

> [T]he plaintiff must first establish a prima facie case by demonstrating (1) [he] engaged in statutorily protected activity, (2) [he] suffered an adverse employment decision, and (3) the decision was causally related to the protected activity. The burden shifts back to [HB&G] if [Camp] can establish a prima facie case, requiring [HB&G] to "articulate a legitimate, nondiscriminatory reason" for his termination. Finally, if [HB&G] meets this burden, then [Camp] must show that the supposedly legitimate reason was in fact a pretext designed to mask illegal discrimination.

*Jones*, 854 F.3d at 1271 (internal citations omitted).

It is undisputed that Camp was engaged in statutorily protected activity when he requested FMLA leave in 2015 and 2016 and that his employment was subsequently terminated. However, Camp's prima facie  case of retaliation fails at the third prong.  Even construing the facts in the light most favorable to Camp, he was informed in June 2016 that he would be replaced—roughly eight months after Servais allegedly threatened him with termination if he took leave in September 2015.

> "Close temporal proximity between protected conduct and an adverse employment action is generally 'sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection.'" *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298 (11th Cir. 2006) (quoting *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d

791, 799 (11th Cir. 2000)). But "temporal proximity, without more, must be 'very close'" in order to satisfy the causation requirement. *Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1364 (11th Cir. 2007) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001)) (holding that "[a] three to four month disparity" between the statutorily protected conduct and the adverse employment action is too long to establish temporal proximity).

*Id*. at 1271–72.

In this case, the temporal proximity between Camp's September 2015 leave request and his termination is too attenuated for Camp to establish the requisite causal connection with respect to his 2015 leave request.

Camp's September 2016 FMLA leave request, although closer in time to his termination, does not save his FMLA retaliation claim either. The decision to replace Camp was made in June 2016, and Mack was hired to replace Camp in August 2016. The undisputed evidence demonstrates that Camp's departure from the company was determined long before he requested FMLA leave in September, 2016. Camp's departure date was not firmly established—it was dependent on the transition. While Camp's actual last day of employment was flexible, his departure from the company was not in doubt. The Court concludes that Camp has failed to establish that there exists a genuine dispute of material fact with respect to the causation prong of a prima facie case for his claim of FMLA retaliation. The Defendants' motion for summary judgment on Camp's FMLA retaliation claims is due to be granted.

### E.       Retaliation Claims

Camp alleges separate retaliation claims under multiple anti-discrimination statutes[7] arguing that HB&G terminated him even though it should have known that he would file a charge of race, age and disability discrimination with the EEOC.  In the Eleventh Circuit,

> to successfully allege a *prima facie* retaliation claim under either Title VII, the ADEA or the ADA,  a plaintiff must show that (1) []he engaged in statutorily protected expression; (2) []he suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression.

*Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002) (italics in original).

Statutorily protected activity includes filing charges with the EEOC, but "is not limited to individuals who have filed formal complaints, but extends as well to those, . . . who informally voice complaints to their superiors or who use their employers" internal grievance procedures.  *Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989).

When questioned in deposition, Camp specified that the protected activity he engaged in was the filing of EEOC charges after he was terminated.  He makes no allegation that he complained to anyone at HB&G, or that he filed any grievances with the company prior to the end of his employment.  Camp's retaliation claims fail at the first prong of prima facie case because he cannot demonstrate he engaged in protected activity prior to the adverse employment action.  "Camp admits that this protected activity occurred

---

[7] Camp brings retaliation claims pursuant to Title VII, ADA, ADEA, and the AADEA.

after he was terminated, and therefore, it cannot form the basis of a claim of retaliation." (Doc. 62 at 65).

In an effort to salvage his retaliation claims, Camp contends that because the Defendants knew he was seeking legal counsel, a reasonable jury could conclude that the decision to terminate him was based on "a retaliatory animus." (*Id.* at 66). Camp further argues that HB&G should have known he was going to file an E.E.O.C. charge because Mack was an experienced Human Resources Director. Camp points the Court to no evidence that HB&G suspected or feared that he would file a charge of discrimination. At best, the evidence shows that Camp filed his charges of discrimination after the decision to terminate his employment was made by HB&G.

Although Camp argues there is other evidence of discriminatory animus, (doc. 62 at 65–66), Camp in fact relies on pure speculation. Camp repeatedly testified in deposition that the Defendants "should have known" that he was going to file an EEOC charge or a lawsuit alleging discrimination. However, speculation and assumptions are not evidence. Camp has presented no evidence to support his claims of retaliation. His reliance on repeated and unsubstantiated allegations is insufficient to preclude summary judgment on these claims.

### F.  Hostile Work Environment Claims

Camp alleges claims of hostile work environment under multiple anti-discrimination statutes,[8] asserting that these claims are encapsulated in his discrimination

---

[8] Camp brings his hostile work environment claims pursuant to Title VII, ADA, and the ADEA.

claims.  Camp devotes a single paragraph in his brief to his hostile work environment claims, not even setting forth the legal standard.  His argument in its entirety is as follows:

> Defendants argue that Camp cannot support his harassment claims[9] because Servais was not belittling towards him verbally or in writing and Servais never made any negative comments about his race, age, sex, or disability.  (Doc. 53, p. 42.)  But not all harassment claims must be based upon belittling and humiliating comments.  An employer can unlawfully harass an employee by subjecting that employee to an environment that reflects hostility to the employee's race, age or disability.  The evidence summarized and discussed above is sufficient for a reasonable jury to conclude that Servais created a hostile or harassing environment for Camp beginning in September 2015 and continuing until his termination in October 2016.

(Doc. 62 at 64–65) (footnote in original).

A hostile work environment claim requires proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Gowski v. Peake*, 682 F.3d 1299, 1311 (11th Cir. 2012) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

---

[9]  Camp has not asserted stand-alone harassment claims.  The harassment allegations are part and parcel of his discrimination claims.  As the Supreme Court noted in *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986), Title VII's prohibition is an expansive concept which sweeps within its protective ambit the practice of creating a work environment heavily charged with discrimination.  Harassment or hostile environment claims are based on the totality of the circumstances.  A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002).

To establish a prima facie case of hostile work environment,[10] a plaintiff must show that

> (1) he belongs to a protected group; (2) that he suffered to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee, . . .; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) the employer is reasonable for that environment under a theory of either direct liability or vicarious liability.

*Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1153 (11th Cir. 2020).

"To show that harassment was sufficiently severe or pervasive to alter the terms or conditions of his employment, an employee must prove that his work environment was both subjectively and objectively hostile." *Id.*  It is the fourth element—conduct sufficiently severe or pervasive to alter the conditions of employment—"that tests the mettle of most . . . harassment claims." *Gupta v. Fla Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000). A plaintiff must establish that the harassment is sufficiently severe or pervasive to ensure that "Title VII does not become a mere general civility code." *Id.* (internal quotations omitted).  There is an objective and subjective component to the fourth prong, and the Court "examine[s] the statements and conduct complained of collectively to determine whether they are sufficiently pervasive or severe" to constitute harassment. *Id.*

---

[10] The Court assumes, without deciding, that Camp can bring an aged-based or disability-based hostile work environment claims in addition to a race-based hostile work environment.  *See Cooper v. CLP Corp.*, 679 F. App'x 851, 852–53 (11th Cir. 2017); *see also Barneman v. In't Longshoreman Assoc. Local 1423*, 2021 WL 50156 n.6 (11th Cir. Jan. 6, 2021) (assuming a claim of hostile work environment is "cognizable under the ADA or the ADEA," claims are subject to exhaustion requirement).

Camp relies on the alleged denial of his FMLA leave in September 2015 and his termination to support his claims of a hostile work environment.  However, discrete employment actions do not alone give rise to an actionable hostile work environment claim. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002); *McCann v. Tillman*, 526 F.3d 1370, 1378–79 (11th Cir. 2008). Camp fails to establish that the discrete employment actions, viewed collectively, create a hostile work environment.  Camp offers no comments directed at him and describes no conduct sufficiently severe or pervasive to affect a term or condition of his employment or create a hostile work environment.  Even if Camp could point to allegedly offensive comments, sporadic and isolated use of derogatory language alone is not enough to establish severe or pervasive harassment.

Applying the requisite factors to the totality of these events, the Court concludes that Camp has failed to establish a genuine issue of material fact regarding whether his work environment was objectively sufficiently severe or pervasive to alter the terms and conditions of his employment and create a hostile working environment.  Camp presents no evidence that he was hindered in his ability to do his job.  This is not a situation where "the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008).

Camp's hostile work environment claims are also deficient because Camp has failed to demonstrate that any conduct about which he complains was based on his race, age, or disability.  To survive the Defendant's properly supported motion for summary judgment, Camp must come forward with some evidence in support of his claims that the allegedly hostile work environment was based on protected characteristics.  Camp points to no

evidence from which the Court could conclude that any conduct was motivated by his race, age, or disability. *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002) (holding that, to establish a claim for a hostile work environment under Title VII, the plaintiff must establish that he suffered workplace harassment on the basis of his membership in a class protected by Title VII, such as race).

In sum, the Court concludes that Camp has failed to demonstrate that the conduct about which he complains was motivated by protected characteristics. Thus, he has failed to create a genuine dispute of material fact about a necessary element which is fatal to his hostile work environment claims. The Court therefore concludes that the Defendants' motion for summary judgment on Camp's hostile work environment claims is due to be granted.

## VII.  CONCLUSION

Accordingly, for the reasons as stated, it is

ORDERED as follows:

1.      The Defendants' motion for summary judgment (doc. 53) is GRANTED with respect to Counts One, Two, Three, Five, and Six, and these claims are DISMISSED with prejudice;

2.      The Defendants' motion for summary judgment (doc. 53) is DENIED with respect to Count Four solely on the Plaintiff's FMLA interference claim that is based on his September 2015 FMLA leave request against HB&G and Servais; in all other respects, the Defendants' motion for summary judgment on Count Four is GRANTED.

3.     The Defendants' motion for summary judgment is GRANTED with respect
to claims against Defendant Mack individually.

Done this 29th day of March, 2021.


_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

36